Nott, Ch. J.,
delivered the opinion of the court:
The statute providing for the improvement of the channel of the Mississippi between South Pass and the Gulf of Mexico by means of “walls, jettees, dikes, levees, and other structures ” provides for details which are generally intrusted by the legislative to the executive branch of the Government. Act 3d March, 1875 (18 Stat. L., p. 468, sec. 4). It declares — •
“that the conditions herein prescribed being fully complied with, the United, Staten hereby promise and agree to pay to said Eads, or to his assigns or legal representatives, five million two hundred and fifty thousand dollars for constructing said works cmcl obtaining a depth of thirty feet in said channel, and the annual sum of one hundred thousand dollars for each and every year that said depth of thirty feet shall be maintained by the jettees and auxiliaiy works aforesaid in said South Pass during twenty years aften' first securing the said depthA
The statute, therefore, is in form as well as in substance a contract, in pursuance of which one party is to do the work and the other party is to pay for it.
■ The amount of §5,250,000, it will be observed, is for “constructing said works and obtaining a depth of 30 feet in said channel;” and the §100,000 for each and every year, it will likewise be observed, is for maintaining “said depth of 30 feet ” “ during twenty years after first securing the said depth. ”
*286 The statute previously declares that the object of the agreement is to secure “a wide and deep channel.” There are subsequent provisions securing a width ultimately of 350 feet, but the $100,000 a year in the above general declaratory clause of the statute is for maintaining “a depth of 30 feet.” In other words, the parties contemplated the fact that after the work was constructed and a depth of 30 feet obtained the channel was liable to be more or less obstructed bjr the well-known enormous sediment of the river and that its depth must be maintained. The $100,000 a year, as above expressed, was to secure that depth for twenty years.
The statute also contemplated another fact, to wit: That the “walls, jettees, dikes, levees, and other structures” might go to pieces and the whole work, after a depth of 30 feet had been obtained, might be a failure. Accordingly, provision was made for security. Ordinarily such security would lie in the form of a bond with good and sufficient sureties. • In this case, however, Congress provided that the security should be the last or final $1,000,000 of the contract price which would become due to the contractor on the completion of his work. If a bond had been given, there would have been no loss of interest to the contractor; but if $1,000,000 of his money remained unpaid for a period of twenty years, a very serious loss would result to him. Accordingly, the statute provided that so long as the money should remain in the possession of the Government as security he should receive interest thereon and that the rate of interest be fixed at 5 per cent. The following are the words of the statute, and the determination of the present controversy depends solely upon the construction which shall be given them:
. “ When a channel thirty feet in depth and three hundred and fifty feet in width shall have been obtained by the effect of said jetties and auxiliary works aforesaid, the •.remaining one million dollars shall be deemed as having been earned by said Eads and associates; but said amount shall remain as security in possession of the United States for-the purposes hereinafter set forth, interest at fee per centum, pm' annum on same being payable to said Mads, his assigns and legal representatives, semiannually, from the date when a channel of thirty feet in depth and three hundred and fifty feet in width shall have been first secured, so long as said money, or any part thereof, is held by the United ¡States.
*287 “That after said channel of thirty feet in depth and of not less than three hundred and fifty feet in width shall have been secured, one hundred thousand dollars per annum shall be paid in equal quarterly payments during each and every year that said channel of thirty feet in depth and three hundred and fifty feet in width shall have been maintained by said Eads and his associates bjr the effect of said jetties and auxili ary works aforesaid in said pass, for a period of twenty years, dating from the date on which said channel of thirty feet in depth and three hundred and fifty feet in width shall be first secured: Provided, however, Tlh&t noyxort of sioch annual compensation shall he paid for any period of time dvrring which the channel of said-pass shall'be less than thirty feet in depth and three hundred and -fifty feet in width, as hereinbefore specified.
‘ ‘ That the said channel of thirty feet in depth and three hundred and fifty feet in width having been maintained for ten years, one-half of the one million dollars hereinbefore mentioned shall be released and paid to said Eads, his assigns or legal representatives; and said depth and width having been maintained for ten additional years, the remaining half of the said one million dollars shall be released and paid as aforesaid. And if any of said money shall have been paid under the provisions of this act as hereinafter provided, then the residue shall be paid at the times above stated.
“That in case said Eads and associates, in order to maintain a channel of thirty feet in depth and three hundred and fifty feet in width, shall deem it necessary to expend on said works, during any one or more of said twenty years, any money in excess of the annual payments received by them during said year or years under this act, the Secretary of "V^ar shall, on satisfactory proof of such expenditures, authorize, as often as such extra expenditures may require, the payment of the same from the said money in pledge to said Eads or his legal representatives. And such payments shall be made from the five hundred thousand dollars to be released at the end of ten years before any payment shall be made from the five hundred thousand dollars to be released at the end of twenty years; and if any failure to maintain said channel of thirty "feet in depth and three hundred and fifty feet in width shall occur, the date for releasing the said money held in pledge shall be postponed for an equal period of time, and the compensation for maintaining said channel shall cease until said depth and width shall be again restored, the maintenance of a channel of thirty feet in depth and three hundred and fifty feet in width for twenty years, exclusive of all such periods of failure, being intended by this act. And at any time after said jetties shall have been completed, and said channel of thirty *288 feet in, depth and three h,und/red and fifty feet in width shall hare been obtained, that the United States may elect to pay the said one million dollars, and stop the payment of said interest and said annual sura of one hundred thousand dollars- for the maintenance of said depth and width, said United States shall have the right to do so on payment of said money held as security and in pledge as aforesaid, together with the interest and annual compensation for maintenance which may be earned at the date of such final payment; and on such payment being-made by the United States the supervision and maintenance of said jetties and auxiliary works by said Eads and associates, and all liability on their part, shall cease and determine. ”
When Congress declared that this “remaining $1,000,000” should be “ deemed as having been earned by said Eadsf and provided that interest for the use of his money should be paid to him, and wrote into the statute the word “security” they brought this part of the transaction under the principle of the law of guaranty. Whether a bond was given by the contractor or his monej7 retained by the Government as securit}' was immaterial; the difference was merely in the form of the securitjn
The question immediately arises: What grounds have the defendants shown for maintaining an action on a bond of guaranty ? Or, what is the same thing, for appropriating and refusing to pay over money to the contractor which the statute declares to be his ?
The defendants have proved nothing. It does not appear that the channel was not maintained at the designated width of 350 feet; it does not appear that navigation was interfered with; it does not appear that any vessel ever grounded; it does not appear that the Government or the owners of any vessel navigating the river suffered one dollar’s injury by reason of the insufficient depth; it does not appear that the prescribed depth of 30 feet was ever encroached upon more than a single inch. No damage whatever, either to the defendants or to any other person, is alleged or shown or attempted to be shown.
By the defendants it is insisted that they did not enjoy during this prescribed period of twenty.years a channel of the depth of 30 feet. But that does not relieve them from the necessity of proving damages. Moreover, there are to that contention three answers:
*289 First. The parties contemplated that very contingency of impaired depth, and the statute expressty provides for it. The amount of $100,000 was to be paid the contractor ‘ ‘ during- each and every year that said channel of 30 feet in depth and 350 feet in width shall have been maintained by the said Eads,” “dating from the date on which said channel of 30 feet in depth and 350 feet in width shall be first secured,” with a proviso “that no part of such annual compensation shall be paid for an}r period of time during which the channel of said pass shall be less” than the prescribed depth and width. In other words, as the contract has been construed and carried out by both parties, the contractor was bound, in consideration of $100,000 a year, to give to the defendants twenty years during which the channel was to be not less than 30 feet in depth and 350 feet in width; or, as likewise construed by the parties, whenever the channel was not of the prescribed depth and width the interval would not be reckoned as a part of the twenty years and, consequently, the prescribed period of twenty years,would extend beyond the calendar period of twenty years from the time when the annual compensation began to run.
Second. There is no such provision in the statute imposing-loss or liability5" upon the contractor as regards the $1,000,000 either as to principal or interest. On the contrary, the statute is explicit that when the prescribed channel “shall have been obtained” the u$l,000,000 shall be deemed as homing been earned,” and it is equally explicit in declaring that the interest thereon shall be paid to the contractor semiannually “ so long as said money, or any part thereof, is held by the United States.” The time of final payment of the principal is to be when the channel of the prescribed depth and width has been maintained for twenty jmars; but the payment of interest is to be made “so long as said money, or airy part thereof, is held.” Moreover, the statute expressly provides that at any time after the completion of the work “the United States may elect to pay the said $1,000,000 and stop the payment of said interest.”
Third. The defendants lost nothing- by the prolongation of the prescribed period of twenty years. The}" held in theii *290 hands the contractor’s money, and, in contemplation of law, it was worth to them what they had agreed to pay for it so long as the}7 chose to hold it. From a legal point of view it would have been immaterial whether they used the money for their own purposes or whether they invested it in a trust companj7 and agreed to pay over to the contractor the interest which they might receive. In either case the interest would be equally the money of the contractor, and the defendants were free to make either bargain. When, through the statute, they entered into the present agreement, they elected to be borrower and to pay for the use of the money a prescribed interest. The retention of the principal after the expiration of twenty years was their own act, by their own election and for their own benefit. The interest which thereafter accrued was the contractor’s; and the defendants have shown no loss, in]ury, or damage, suffered by them or caused by him, which would authorize them to withhold his money and appropriate it to their own use.
The legal conditions of this case can be reduced to a very short story: (1) The defendants retained in their own hands 11,000,000 of the contractor’s money; (2) they reserved an election to pay this, the principal debt at any time; (3) their agreement, the statute, expressly provided that this interest shall be paid “ so long as said money, or any -part thereof.\ is held hj the United States.” Inferences and implications can not prevail against the express words of the statute.
The judgment of the court is that the claimants recover interest not barred by the statute of limitations up to the day of the rendition of this j udgment, to wit, the sum of $26,109.81.